DOWNEY, JAMES C., Associate Judge,
dissenting:
With some trepidation, I dissent. The resolution of this case has been-most difficult as evidenced by the length of time it has been pending here. The decision of my colleagues to affirm creates some apprehension on my part, yet I cahnot escape the conclusion that the circuit court should have decided that the appellees had no remedy available to them under their complaint.
Appellees began the present litigation when they filed a complaint which they characterize as one for “libel and slander and slander of title.” In material part the complaint alleged the following things. Appellant had filed a mortgage foreclosure suit against some of the appellees. During the course of the foreclosure litigation, appellant filed two other lawsuits against ap-pellee Chester Carson on two promissory notes. The court entered two summary judgments against Chester Carson totalling $150,000 in the litigation on the two notes. Shortly after the entry of those two judgments appellant, pursuant to a stipulation of the parties in the mortgage foreclosure suit, acquired title to the mortgaged realty and otherwise received all of the consideration appellant was entitled to receive under the stipulation. Appellant caused the summary judgments against Chester Carson to be recorded in the public records of Orange County and refused to satisfy them, although the stipulation provided that appellant would not enforce those judgments. Appellant’s refusal to satisfy the judgments (a) was wrongful, willful, and malicious, and done with the intention of preventing the appellees from procuring credit and continuing their trade as building contractors; and (b) constituted libel and slander against appellees in that the presence of the judgments on the public records amounted to a publication to the world that appellees owed a debt and refused to pay it, thereby damaging appellees’ ability to obtain credit and precluding them from carrying on their trade. For the foregoing reasons, appellees were entitled to recover compensatory and punitive' damages from appellant. Thereafter appellant filed an answer denying that appellant had engaged in any wrongful conduct. On April 26,1978, a non jury trial on the foregoing pleadings began. The evidence at the trial reflected that appellee, Chester Carson, is a builder and developer. In order to finance one of his projects, Chebon Corporation, a closely held Florida Corporation owned by Chester and Glenna Carson, borrowed over one million dollars from appellant and gave appellant a promissory note secured by a mortgage on certain realty in Orange County. As additional security for the loan to Chebon, Chester Carson pledged a $260,000 certificate of deposit.
*740 Chester Carson also obtained two personal loans totaling $150,000. He also pledged the $260,000 certificate of deposit. Eventually, appellees’ obligations to appellant fell into default. Appellant filed one suit to foreclose its mortgage on the Chebon Corporation realty and two suits against Chester Carson on the two individual promissory notes for the $150,000. Appellant applied the $260,000 certificate of deposit against the Chebon Corporation mortgage debt, thus reducing the amount thereof. Appellant also obtained two judgments against Chester Carson on the individual notes. These judgments, dated May 5, 1975, and May 7, 1975, were recorded in the public records of Orange County.
On or about May 9, 1975, the appellant and appellee entered into a stipulation in the mortgage foreclosure suit wherein ap-pellees agreed, among other things, to withdraw their defenses and counterclaim in the foreclosure suit and allow appellant to proceed ex parte, and appellees give appellant a general release for any existing claims appellees had against appellant. In turn appellant agreed not to seek any deficiency judgment in the foreclosure suit and agreed not to enforce the judgments it obtained on the individual notes. In that regard the stipulation provided:
“1. Chebon Corporation, Chester Carson and Glenna P. Carson, his wife, hereby withdraw all affirmative defenses and/or counterclaims as filed in this cause or as filed in any other legal action now pending in the Circuit Court of Orange County, Florida against Com-Bank/Winter Park.
2.Chebon Corporation, Chester Carson and Glenna P. Carson, hereby fully release and exhonorate (sic) Com-Bank/Winter Park from any and all actions, causes of actions, claims, demands liability which may have accrued to Che-bon Corporation, Chester Carson and Glenna P. Carson by virtue of all past action, nonaction, misfeasance and/or nonfeasance of the said ComBank/Winter Park up to the time of the execution of this Stipulation.
3. ComBank/Winter Park agrees that it will not in this action seek to obtain any deficiency judgment against the Defendants, Chebon Corporation, Chester Carson and Glenna P. Carson.
4. That ComBank/Winter Park will not seek to collect and enforce by execution or otherwise, any judgment or judgments which the said ComBank/Winter Park may obtain in the following legal actions:
A) IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA. CIVIL DIVISION FILE NO. 75-2377
COMBANK/WINTER PARK, a Florida banking corporation, Plaintiff, vs. CHESTER CARSON, Defendant.
B) IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA. CIVIL ACTION NO. 75-2381
COMBANK/WINTER PARK, a Florida banking corporation, Plaintiff, vs. CHESTER CARSON, Defendant.
5. Should ComBank/Winter Park fail to acquire the fee simple title to the mortgaged premises at the foreclosure sale, then and in such event the prohibition against the collection and enforcement of the judgments as referred to in the preceding paragraph of this stipulation shall be null and void and the Plaintiff may thereafter enforce such judgments in any manner allowed by law.”
Shortly after the date of the stipulation, appellant recorded the judgments on the individual notes in the public records of Seminole County. On May 13, 1975, the court entered a final judgment of foreclosure in favor of appellant, which eventually bought the real property at public sale. Thereafter appellees requested appellant to satisfy the two judgments based upon the individual notes, but appellant refused. Appellees adduced testimony that as a result of those judgments being of record their credit was damaged and they could not obtain financing on their construction *741 projects causing them substantial damages. At the end of the evidence, the court entered judgment for appellees for $22,500 compensatory and punitive damages, plus costs.
On appeal the Bank contends that the judgment is erroneous because the stipulation of the parties to the mortgage foreclosure action required the appellant Bank to refrain from trying “to collect and enforce by execution or otherwise”, the judgments referred to in the stipulation; the stipulation did not require the Bank to satisfy the judgments as suggested by appellees. In support of its contention appellant points to the testimony of the two lawyers who represented the parties when the stipulation was prepared and signed. The testimony of those lawyers[1] indicates that there had been bad feeling between the parties at the time of the stipulation so that no quarter was given. It is clear appellant never agreed to satisfy the judgments.
The argument section of appellees’ brief commenced with a statement which appears to contain the thrust of appellees’ argument:
Placing judgments on the Public Record and leaving those judgments on the Public Records even though they had been fully secured by Certificates of Deposit and the bank had taken those deposits, after notice of the actual damages accruing to the Plaintiff and demands that they be released, is a statement open to the public on the public records that the Plaintiff has failed to pay his debts and that he owes the Defendant money.
It is clear that when appellant obtained and recorded the two judgments on Chester Carson’s personal notes, they were valid and existing judgments. In addition, at the time the judgments were rendered and recorded, the appellant had already utilized the $260,000 certificate of deposit to pay part of the mortgage debt of Chebon Corporation. Appellee complains about the use of the certificate to help satisfy the mortgage obligation, but the hypothecation agreement signed by Chester Carson, the owner of the certificate, clearly authorized appellant to apply the certificate to the mortgage debt.
In considering the totality of the evidence it may appear that what the parties really intended was to have the judgment satisfied of record if the appellant applied the certificate of deposit to the debt created by Carson’s individual notes and if the appellant was the purchaser of the mortgage realty. In the foreclosure proceeding, however, that is not what the appellant agreed to do in the stipulation. Both of the lawyers who then represented the adverse parties and prepared the stipulation testified that appellee not only did not agree to satisfy the judgments but that appellee did not intend to do so. In such a setting there may be some cause of action available to appellees to have the judgments in question remanded from the public records, but I remain convinced that an action for libel and slander or slander of title does not lie. Thus, I would reverse the judgment appealed from.

. Carson and Chebon’s attorney testified:
"Q. . . you knew that the satisfaction of judgments was not a part of that agreement, isn’t that correct?
A. Yes, sir, I did know that the satisfaction of the judgments was not mentioned.
It was my feeling, in connection with the negotiation on that agreement that we got the best deal we could get from the bank at that time.
Q. That was the best deal?
A. Under the circumstances.
Q. The best deal you could get under the circumstances was to get them to agree not to attempt to collect and not to obtain the deficiency?
A. Yes, because it was a very adversarial situation between the bank, I think. There was (sic) some bad feelings and so forth." (Emphasis added) (T. 364-365.)
The Bank’s attorney described the proceedings as follows:
“It was my intention to not concede anything, as is the case in most adversary proceedings, unless negotiated to by counsel who represented the Carsons.

These points were carefully negotiated pri- or to my drañing the stipulation.

But everyone fully intended at that time that those two judgments, three judgments, would go on record and remain there. . . ”
(Emphasis added.) (T. 51.)